## LOUIS SCHWANENFELDT, Respondent, v. METROPOLITAN STREET RY. CO., Appellant.

### Kansas City Court of Appeals, March 1, 1915.

1. **NEGLIGENCE: Damages: Suit by Husband for Loss of Wife's Services.** In a suit by a husband for expense and loss of wife's services caused by personal injuries inflicted upon the wife by defendant's negligence, the petition alleged and the proof showed that the wife was a passenger on defendant's street car, that the car stopped to let off passengers and the wife promptly arose to leave and stepped into the aisle while the car was motionless, that suddenly and without warning or apparent reason therefor the car started and threw the wife to the floor. *Held,* that the cause of the jerk was one of the things likely to be within the knowledge of defendant and wholly unknown to the passenger, and since the petition alleged negligence generally, the presentation of the facts made a prima-facie case of negligence.

2. ————: ————: **Contributory Negligence.** Under the facts shown there is no room for the charge that the wife was guilty of contributory negligence.

3. **INSTRUCTIONS: Defining the Word "Passenger."** Where there was no dispute over the fact that the injured wife was a passenger at the time of the injury and the evidence clearly

showed such fact, there was no necessity for plaintiff's instruction to define the term "passenger."

4. ————: **Limiting Amount Recoverable: Separating Items of Loss.** In a suit by a husband for loss of his wife's services and for expenses incurred by reason of a personal injury inflicted upon her by defendant's negligence, it is proper to limit the amount of expenses recoverable to the amount shown by the evidence. And if it was error to limit the amount of services to a certain sum per week and thereby make a distinction between "services" and loss of "society, aid and comfort," it would seem to be in favor of rather than against defendant.

5. **TRIAL PRACTICE: Evidence: Witnesses: Conclusions.** Where witnesses, after describing the personal appearance of the injured wife and the difference in her manner and activity before and after the fall, said she was very weak and nervous, such statements were not objectionable as being mere conclusions.

6. ————: ————: **Wife's Activity.** Evidence that the wife kept several boarders before the accident and did all her own work was not improper where plaintiff stated at the time it was offered, that it was solely to show the wife's physical condition before the accident as compared with her strength and ability after the fall, and was not for the purpose of showing the value of her services, and the jury were plainly so told by the court.

7. ————: ————: **Value.** A witness who was a housekeeper herself and knew something of the value of such work is not incompetent on the ground that she was not shown to be qualified to testify as to the value thereof. If after a witness has qualified herself, it appears in cross-examination that she is not qualified to testify, the admission of her testimony is not error, unless there is a motion then made to strike out her testimony.

8. ————: **Argument to Jury.** Where an objection to an improper argument was made and sustained and the offender mildly reproved, no reversible error can be predicated on such improper argument in the absence of any request for other or more drastic action on the part of the trial court.

9. ————: **Excessive Verdict: Extent of Injuries: Jury Question.** Where the evidence tends to show that plaintiff's wife has been changed from a healthy, happy, active helpmeet to a weak, nervous, gloomy woman unable to perform her duties as before, and that this condition has continued for 177 weeks and will likely so continue, a verdict of $1200 will not be deemed excessive. The questions whether plaintiff's wife was injured by the fall and the extent of her injuries are questions solely for the jury where there is substantial evidence to support the case.

Appeal from Jackson Circuit Court.—*Hon. Wm. O. Thomas,* Judge.

AFFIRMED.

*John H. Lucas* and *Chas. N. Sadler* for appellant.

*J. H. McVay* for respondent.

TRIMBLE, J.—Suit by a husband for loss of his wife's services and for medical expense resulting from injuries alleged to have been inflicted upon her by defendant's negligence. The wife, in company with a number of women friends, was a passenger on a street car. Upon its stopping at the place where they desired to alight, the women arose and stepped into the aisle on their way to the door. At this moment the car, without warning, suddenly moved forward with a jerk throwing plaintiff's wife, a heavy, middle aged woman, headlong to the floor.

A trial resulted in a verdict and judgment for plaintiff, and defendant has appealed.

It is first urged that there is no proof that the car in question belonged to defendant's system. The point is without merit. The case was tried by both sides on the theory that there was no issue as to the ownership of the car. Defendant placed the conductor of the car on the stand, and his testimony clearly shows it was one of defendant's cars. The evidence as to the method of reporting and attending to accidents and their investigation by defendant, and of this one in particular, shows that the ownership of the car was conceded.

It is next claimed that there is no evidence of negligence. We cannot agree to this. The petition alleged general not specific negligence and that injury thereby resulted to plaintiff's wife, a passenger. The facts, as disclosed by the evidence, are that the wife was a passenger; that the car stopped at its usual

stopping place to let off passengers; that the wife promptly arose and stepped into the aisle while the car was motionless; that suddenly, without warning, and without apparent reason therefor, it started forward with a jerk and stopped again; and that this jerk threw the wife to the floor upon her back. Under these circumstances, the cause of the jerk was one of the things likely to be within the knowledge of the defendant, and wholly unknown to the passenger. And, since the petition alleged negligence generally, the presentation of the facts made a prima-facie case, and it devolved upon defendant to show that what happened occurred through no fault of its own. The movement of the car under the circumstances was not an incident to the necessary and careful operation thereof. It could not have occurred except through some defect in the appliances or some omission or neglect of duty on the part of the operators of the car. There was no evidence to contradict this, and a presumption of negligence, therefore, arose and remained in force. [Hite v. Metropolitan St. Ry. Co., 130 Mo. 132, l. c. 137; Bartley v. Met. St. Ry. Co., 148 Mo. 124; Roscoe v. Met. St. Ry. Co., 202 Mo. 576.] The car being at a standstill when the jerk occurred, it cannot be said to be a part of the usual and ordinary operation of the train as in cases like Hedrick v. Missouri Pacific Ry. Co., 195 Mo. 104.

We are at a loss to know wherein the evidence shows any contributory negligence upon the part of the plaintiff's wife. She did not get up from her seat until after the car stopped. The car had reached its regular stopping place and where the wife desired to alight. She arose promptly and was in the aisle where she had a right to assume that it would not start until the nine passengers in her little party had alighted. Being taken thus suddenly unawares, her feet were jerked from under her throwing her heavily to the floor. Nothing she did or omitted to do in any way

contributed to her fall, so that we are at a loss to know where there is any room for the charge of negligence against her. Certainly no want of ordinary care on her part is disclosed by the evidence which would warrant us in finding contributory negligence as a matter of law.

Plaintiff's instruction number 7 cannot be held erroneous because it failed to define the word ''passenger.'' Under the circumstances of this case the word needed no definition. Plaintiff's wife was in the car, having ridden from the Union Station to Grand avenue and had not severed that relationship when the accident occurred. If there had been any contention over whether plaintiff's wife had attained the status of a passenger then, of course, the jury should have been told what fact would create that relationship. And this was the situation in Nolan v. Metropolitan St. Ry.; 250 Mo. 602. But there is no room on the facts of the case at bar for the application of the rule announced in that decision.

Nor is the instruction erroneous or inapplicable to the evidence because it submits the question of the forward movement of the car ''while plaintiff's wife was in the act of leaving said car.'' She was ''in the act of leaving the car'' from the time she arose from her seat for that purpose, and she was thrown down while in the aisle still ''in the act of leaving the car.'' The objection is wholly without merit.

So also is the criticism that the instruction blames the conductor as well as the motorman. It merely submits to the jury the question whether the conductor or motorman, or both, knew or should have known that plaintiff's wife was about to leave the car, and then submitted the question whether the sudden start and jerk of the car was due to ''the negligence of defendant's servants and employees in charge of said car.''

Nor does the instruction broaden the issues because it used the words ''without any warning'' after

the words "sudden start or jerk forward." The words brought nothing into the case outside of what is necessarily implied in the charge contained in the petition. It would seem that if they had any outside effect whatever it would be to lay a heavier burden upon plaintiff than he was otherwise required to prove, namely, that defendant failed to give warning, before he could recover. But these two words made no change in the issues before the jury.

The objections to instructions 8 and 9 are equally without merit. What is said concerning instruction 7 answers the objections to number 8.

As to instruction number 9, on the measure of the husband's damages, no complaint is made as to various elements of loss for which plaintiff could recover. The objection seems to be that there is a distinction between loss of "services" and loss of the "society, aid, and comfort" of the wife when the term "loss of services" includes both. If the instruction makes a distinction it does so only in limiting the amount of recovery which may be had for loss of services to a certain sum per week. So far as concerns the expenses necessarily incurred, it was proper to limit them to the amount shown by the evidence; and if it was error to limit the amount of recovery on the item of services, it would seem to be one in favor of rather than against defendant. Defendant is in error in thinking the petition confined the loss of society, aid and comfort, to an amount less than the sum named in the instruction, and that consequently the instruction is erroneous on that account. The petition fixed the loss of society, aid, and comfort, past, present and future, at the precise amount stated in the instruction. Nor is the claim well founded that there was no qualification shown on the part of the witnesses who testified as to the value per week of this housewife's services.

It is urged that plaintiff's witnesses, in describing the wife's physical condition before and after her fall, were improperly allowed to state conclusions rather than facts. We have carefully gone through the record in this regard and find that wherever the witnesses did state conclusions the trial court sustained defendant's objections thereto. At other times the witnesses, after describing the personal appearance of the injured wife and the difference in her manner and activity before and after the fall, said she was very weak and nervous. These were objected to as being conclusions. Some of the objections were general and applied indiscriminately to all the statements of the witnesses whether clearly and solely matters of fact or bordering on conclusions of the witnesses. When the objections were not made specifically to the objectionable parts their overruling by the trial court did not constitute error. If, after a witness has described the physical appearance of a person, it be a conclusion to say that such person was weak and nervous, the error, if any, was cured by the witnesses proceeding to enumerate the various things indicating weakness and nervousness. It seems to us that under these circumstances a person's weakness and nervousness are facts about which a witness could testify, and are not to be classed as improper conclusions.

The evidence as to plaintiff's wife having several boarders prior to the accident was not offered to increase the value of her services and it was so stated and the trial court so ruled. It was offered solely to show the amount of work plaintiff's wife was able to do in her household as compared with what she was able to do after the accident. And this comparison was expressly stated not to be on the value of her services but to show her strength and ability to work before and immediately after the fall and ever since that time. It bore solely on the effect produced on her physical condition by the fall and the jury were plainly told

this. There was no error in refusing to exclude the testimony.

It is also urged that error was committed in allowing Mrs. Duett, a witness for plaintiff, to testify as to the value of the wife's services because she was not shown to be qualified. The witness was a housekeeper herself and knew something of the value of such services. She had testified that she was acquainted with such values. Thereupon, over the objection of defendant she was allowed to state what those services were worth. If it afterward came out in cross-examination that she was basing her estimate upon an incorrect rule or did not know what the services were worth, there was no request then made to expunge the witness' testimony from the record.

As to Mrs. Turner, who also testified as to the weekly value of plaintiff's wife's services, the witness clearly and positively stated she knew what such services were worth and was then allowed to testify as to the value of the wife's. If the subsequent cross-examination disclosed that her estimate was higher than any she had ever known of, that was a matter going to the weight of her testimony but certainly no ground for excluding it altogether.

We do not understand that plaintiff, in testifying to the value of his wife's services as a housekeeper, was basing his estimate on any sentimental value or value peculiar to him, but only that a wife's services in this regard were reasonably and ordinarily worth ten dollars per week, and that this estimate should not be reduced because hired girls could be obtained at a somewhat lower figure. The services of the one being obtainable at all times and at all hours of the day or night would be worth more than paid to the ordinary hired domestic, whose services would be available only a part of the time.

Numerous other objections are made to the admission of evidence. We have carefully gone through

the record and are of the opinion that none of them are of merit.

Concerning the objection to the argument made to the jury by plaintiff's counsel we do not think defendant had any grounds for complaint except in perhaps one instance and in that defendant's objection was sustained and plaintiff's counsel mildly reproved and the jury told to disregard it. No request was made for any further action by the court, and hence there is no reversible error in the case on the ground of improper argument.

It is claimed that the verdict is excessive. It was for $1200. The evidence, if believed, tends to show that plaintiff's wife has been changed from a happy, cheerful, active, industrious helpmeet to a weak, nervous, gloomy woman, unable to do her household duties as before, but restricted to such small offices as peeling potatoes and the like; that she is subject to "spells" in which her face becomes deeply flushed, then pale, after which she collapses or falls; that this condition manifested itself at once or soon after the fall and has continued ever since and will likely continue in the future. This has been the situation for 177 weeks in the past and $1200 would be at the rate of a little less than $7 per week to say nothing of the expense for medical attention and the other elements of plaintiff's damage. If plaintiff's wife is in the condition plaintiff's evidence shows she is, we cannot say $1200 is excessive.

As to whether the wife is the invalid she is claimed to be, we are not in a position to say. It may be her condition and the nature of her injuries are greatly exaggerated. But the jury passed upon the evidence and gave plaintiff a little over one-third of the amount asked, and the trial court has approved the jury's finding. Reading the record as presented to us in cold print, we cannot say there is an absence of substantial testimony to support the verdict. Were we to reverse

the judgment and remand the case, or reduce the ver-
dict because of its size, we would be running the risk
of doing a greater injustice than could possibly be
involved in its affirmance.  The trial court, and not this
tribunal, is the place to dispose of these matters when
the evidence is as it is in this case.  So also is the
question of whether the wife's condition is the result
of her fall.  Plaintiff made out a case sufficient to en-
title her to go to the jury on that question.  The jury
and the trial court saw the witnesses, heard them tes-
tify, observed their demeanor, and were in a position
to weigh their testimony.  In the absence of material
error in the trial, the verdict must be accepted here.
Accordingly the judgment is affirmed.  All concur.