**STATE of Missouri, Respondent,**

**v.**

**Clifford Pickett MALONE, Appellant.**

**No. 45451.**

Supreme Court of Missouri,

Division No. 2.

April 8, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied May 13, 1957.

Eugene V. Krell, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Richard R. Nacy, Jr., Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

Clifford Pickett Malone appeals from a judgment imposing a sentence of life imprisonment for the murder, in the first degree, of Willie Stewart. Appellant's contentions (there being twenty-seven main points in his brief, some with several subdivisions) will be developed in the opinion.

Fred T. Stewart, of Fresno, California was visiting Willie Stewart, his brother, at 2605 Lucas avenue, St. Louis, Missouri, in October, 1954. Three steps lead from the sidewalk into the yard at 2605 Lucas and then there is a small walk, about 10 or 12 feet long, leading to four steps to the house. The two had not retired when,

about 2:30 a. m., October 14, 1954, they heard a vendor on the street and Willie wanted Fred to try a pig-ear sandwich. Fred went downstairs to the vendor on the sidewalk. Robert Dryden came by, asked where Willie was, and, informed Willie was upstairs, handed Fred a dollar bill and told Fred to bring him two sandwiches. Dryden started upstairs to see Willie. Fred did not know three men who were making "a lot of racket" in front of the house. Willie came out on the house steps and asked "if they would mind keeping the racket down some because his landlady was sick." One of them said " 'You don't own this sidewalk.' " Willie answered: " 'I know I don't, but I pay rent here, and that's my landlady; I am asking you to keep the racket down.' " Fred, with the sandwiches, passed his brother and started upstairs when he heard a shot. Fred went back to the door, saw his brother staggering off the steps of the house and the three men running. He went upstairs to get Dryden, whom he knew, and when Dryden and he returned, Willie was lying face down on the sidewalk. Fred knelt down and lifted Willie's head and shoulders; and asked for the police and an ambulance.

Willie Washington, C. J. Reed and appellant were the three men making the noise. Washington and Reed testified for the State. Appellant had a revolver, which he had shown his companions. They had stopped to get some pig-ear sandwiches. Washington testified that Willie Stewart came out on the house steps and told them to "get away from the front of his house, they had been making too much noise"; that he did not hear Willie Stewart say anything more; and that Willie Stewart did not threaten appellant. Washington remarked: "Must be mean, or something like that." Appellant, standing in front of the pig-ear man, pulled out his revolver, started up the steps to the yard and said to Stewart: "You are not tough." Reed told appellant: "Let's don't have no argument." Stewart had his right hand in his trouser pocket, standing in the yard by the steps to the house. Appellant backed Stewart up to the house. Washington testified he saw appellant shoot, saw the flash and heard the report, and appellant was three feet from Stewart when he shot him. Stewart then stumbled backwards from the house and fell on the sidewalk at the street.

The jury found and it is not questioned that the shot killed Willie Stewart. It is not necessary to detail the path of the bullet.

All the testimony is that Stewart was not armed. He did not have a knife or other weapon. Appellant testified that he had pulled his revolver on a person who had pulled a knife on him just before reaching the sandwich man.

The officers arrived in a few minutes. Patrolman Leo Stremlau testified that Fred was holding Willie's head and shoulders; that Fred was "unconscious, apparently dead"; that Willie, with Fred, were taken to the Homer G. Phillips hospital, where Willie was pronounced "dead on arrival."

Four photographs of the scene, taken by the officers, were introduced in evidence, and witnesses pointed out the position of the parties and objects. Defendant has not produced these exhibits.

Willie Stewart was wearing a shirt, trousers and some old rubbers. After the homicide a man's right-foot rubber was on the third step leading into the house; a left-foot rubber was in the yard just east of these steps; and in the yard right close to the house steps was a blood spot and a large blood spot was on the sidewalk near the curb.

Appellant, wearing a red, white and black plaid shirt, went to Julia Mosby's, 2802 Lucas, and had her give him one of Washington's white shirts. She picked up appellant's shirt the next morning. and found a gun in it. Appellant came back during the day and she told him she wanted him to take the gun away. Appellant testified he threw the revolver in the Mississippi river.

■ I. Appellant says he was committed to prison and not brought to trial before the end of the third term of court after the indictment was found and, since the delay was not on his application or for want of time to try the case, his motion for discharge, filed October 12, 1955, should not have been overruled. Appellant relies on §§ 545.890, 545.900, 545.910 and 545.920. Statutory references are to RSMo 1949, V.A.M.S., unless otherwise indicated. Following Ex parte Donaldson, 1869, 44 Mo. 149, 152, now § 545.920, applicable here, appeared as § 1925, R.S.1879, and expressly refers to the other sections. They are to be construed together.

The terms of court involved begin on the first Mondays of February, April, June and December, and on the second Monday of September, §§ 478.100, 478.230. The indictment is marked filed December 3, 1954. The December, 1954, term began December 6, 1954. Taking the record approved by the attorneys: Appellant pleaded not guilty December 14, 1954. Thereafter the cause was twice continued to the next term "for the State" and twice continued "for want of time to try the case." At the September, 1955, term appellant was convicted.

■ While § 545.920 in authorizing the discharge of an indictee committed to prison, subject to the exceptions stated in appellant's contention, if not brought to trial until after the third term uses the expression "after the indictment was found," (similar expressions are found in the same context in §§ 545.890 and 545.900), § 545.890 is by specific reference incorporated into said § 545.920, and the discharge is conditioned upon the accused being "indicted for any offense, and committed to prison." In State v. Bithorn, Mo., 278 S.W. 685, 686 [1], the information was not filed until four terms of court had passed after the filing of the justice's transcript. We said: "The charge must be filed and the issue tendered by the state before the defendant can demand a trial, or before the state is subject to the opera-

tion of the statute." Under like reasoning, one should be in prison under the indictment. It is common knowledge that persons indicted for offenses are not always apprehended and committed during the term the indictment is found. The term at which the indictment is found or the information filed is not counted. Robinson v. State, 12 Mo. 390, 392; State v. Schyhart, Mo., 199 S.W. 205, 210 [5]; State v. Wigger, 196 Mo. 90, 94, 93 S.W. 390, 391. It follows, whether or not appellant, as he claims, was in prison under a "bench warrant" at the September, 1954, term, he was not entitled to his discharge at the September, 1955, term of court as two of the continuances were within the exception of "want of time to try the case." Consult State v. Newstead, Mo., 280 S.W.2d 6, 10 [9]; State v. Nelson, Mo., 279 S.W. 401, 402 [1–8].

■ II. Appellant makes the point the court erred in the overruling of his motion for judgment of acquittal at the close of the State's case. Appellant offered evidence in his behalf and the State offered evidence in rebuttal. The point presented was waived. State v. Scott, Mo., 299 S.W. 2d 526; State v. Willhite, Mo., 159 S.W.2d 768 [1]. Clearly, the State made a submissible case. Proof of motive is not essential to a conviction. State v. Logan, 344 Mo. 351, 126 S.W.2d 256, 260, 122 A.L.R. 417; State v. Taylor, 356 Mo. 1216, 205 S.W.2d 734, 737 [6, 7]. The State did not depend on Washington's testimony for a conviction. However, inconsistencies in or contradictions of this witness' testimony were for the jury. State v. Gentry, 329 Mo. 282, 44 S.W.2d 27, 31 [8]; State v. Allison, 330 Mo. 773, 51 S.W.2d 51, 53 [1], 85 A.L.R. 471. As to appellant's intent, see State v. Littlejohn, 356 Mo. 1052, 204 S.W. 2d 750, 752 [1].

■ III. Appellant contends veniremen Stratmann and Knese should have been struck from the jury list for cause. The whole of the voir dire examination of Stratmann is not before us. Mr. Strat-

mann, on examination for appellant, stated he did not "have any feeling against the defendant because he has been hailed into court in this case. * * * Q. As you sit there now do you have any feeling this defendant must have committed the crime charged? A. Yes, sir, I do." Appellant's counsel, after questioning the other veniremen, stated: "I would like to excuse for cause Mr. Stratmann." The State's attorney thought Mr. Stratmann misunderstood the question and upon further examination, the juror stated, among other things, he understood that the State had to prove the charge beyond a reasonable doubt; that he knew of no reason whatsoever why he could not, after hearing the evidence and the instructions of the court, make up his mind as to appellant's innocence or guilt; and that he could give the State and the defendant a fair trial. When veniremen Knese stated he had a wrenched back which bothered him when he sat in one position for any length of time, appellant's counsel stated he was in favor of Mr. Knese being excused. Upon the State's counsel stating he would peremptorily challenge the juror rather than take the time to qualify another venireman, appellant's counsel said nothing further. We find no error in the court's ruling. See State v. Mace, 262 Mo. 143, 153 (II), 170 S.W. 1105, 1108 [3]; State v. Kauffman, 335 Mo. 611, 73 S.W.2d 217, 219 [1–3]; State v. Poor, 286 Mo. 644, 655 (II), 228 S.W. 810, 813 [4, 5]. Consult State v. Scott, 359 Mo. 631, 223 S.W.2d 453, 455 [2, 3]. In addition, neither venireman was on the trial panel and the record does not show whether their names were stricken by the State or by the defendant. We have held in like circumstances the record failed to disclose reversible error. State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 756 [5].

IV. Dr. John J. Connor was chief pathologist for the coroner's office and had custody of the records of the coroner's court. He had many years of experience and had performed many post mortems. Dr. John F. Byrne was one of his assistants and State's exhibit 5 was the transcript of a post mortem examination of deceased by him. Dr. Byrne's name appeared as a witness on the indictment; but he was in the Armed Services and Dr. Connor was called to produce State's exhibit 5. Appellant's counsel had previously seen this report. He interposed no objection to the exhibit or to Dr. Connor's brief explanation brought out by the State.

Appellant complains because Dr. Connor's name was not endorsed on the indictment. The names of persons who appear for the production or identification of public records are not required to be endorsed on indictments and other witnesses may also be used by the State without being endorsed. 42 V.A.M.S. Sup. Ct.R. 24.17; § 545.070; State v. Stanfield, Mo., 1 S.W.2d 834, 837 [6]. A mere objection, as here, without a proper showing of prejudice and need for additional time et cetera, has been considered insufficient. State v. Derrington, Mo., 137 S.W.2d 468, 470 [6]; State v. Farris, Mo., 243 S.W.2d 983, 986 [3–7].

What we have just said disposes of a like objection to Officer Harold Siefert, who was used to show that the State had been unable to locate certain witnesses.

V. As we read appellant's motion for new trial and his brief, he contends Dr. Connor gave opinion testimony beyond the statements in exhibit 5 and he was deprived of his constitutional right to face his accusers, referring, we understand, to the fact that Dr. Byrne had prepared the post mortem report. The testimony complained of by appellant was opened up and brought out by appellant on his cross-examination of Dr. Connor and he is in no position to complain. State v. Cohen, 254 Mo. 437, 453 (IV), 162 S.W. 216, 220 [6], Ann.Cas.1915C, 86; State v. Massey, 358 Mo. 1108, 219 S.W.2d 326, 330 [6]; State v. Isaacs, Mo., 187 S.W. 21, 22 [3].

There was no objection at the trial that the testimony of Dr. Connor violated any constitutional right of appellant. Appellant's failure to timely present the constitutional issue precludes its consideration. State v. Arthur, Mo., 57 S.W.2d 1061 [1]; State v. Lock, 302 Mo. 400, 259 S.W. 116, 125 [11]; State v. Klink, 363 Mo. 907, 254 S.W.2d 650, 656 [10, 11].

VI. Officer Stremlau, who had been with the Metropolitan Police Department for fourteen years, arrived at the scene a few minutes after the shooting, and testified Willie Stewart "was unconscious, apparently dead." Appellant says the witness was not competent to so state. Aside from the fact appellant's objection was not timely interposed, appellant's cited authority, State v. Wilkins, Mo., 100 S.W. 2d 889, 893 [3–8], refutes his position. See also Schwanenfeldt v. Metropolitan St. R. Co., 187 Mo.App. 588, 174 S.W. 143, 145 [10]; 40 C.J.S., Homicide, § 248, p. 1188; Jones on Evidence, 4th Ed., §§ 360–366; Underhill, Criminal Evidence, 5th Ed., § 306.

VII. Appellant complains of the court permitting witnesses to indicate by a mark on photographs of the scene taken within a few minutes after the occurrence where certain events occurred. Appellant has not seen fit to produce these photographs for review and error is not established. The contention is without merit. 20 Am.Jur. 617, § 741; 32 C.J.S., Evidence, § 709, p. 614.

VIII. Fred Stewart, when asked what type of work his brother did, answered "Seaman,—Well, he was a seaman before when he went in the service; when he came out, I don't know what he done." Appellant's objection following the answer and, later, motion to strike were overruled. The facts distinguish the instant case from appellant's authorities. State v. Taylor, 293 Mo. 210, 238 S.W. 489, 491 [4], held defendant's honorable discharge from the United States Army, certifying to the soldier's character as excellent, was incompetent. In State v. Cavener, 356 Mo. 602, 202 S.W.2d 869, 873 [3, 4], the deliberate injecting into the case that the deceased had been a member of the Masonic lodge and of the Methodist church, considered in connection with conceded obscurity of an instruction on threats, was held reversible error. The instant record does not disclose that the State deliberately injected the fact that deceased had been in the Armed Services. The objectionable statement related to a collateral matter. Appellant's authorities do not establish error.

IX. Appellant contends Willie Washington was not a competent witness. When the witness was produced, appellant's counsel, after the jury was excused, asked the witness if he would refuse to answer questions that would tend to incriminate him, and the witness answered he did not want to incriminate himself. He also stated he was present at the shooting and was willing to testify to what he heard and saw. Claiming the right against self-incrimination, Mo.Const. Art. I, § 19, is personal to the individual, and there is no merit in appellant's position. State v. Kennedy, 154 Mo. 268, 285 (III), 55 S.W. 293, 298(3); State v. Hamilton, 304 Mo. 19, 263 S.W. 127, 130 [4]; State v. Miller, 357 Mo. 353, 208 S.W.2d 194, 201; State v. White, Mo., 126 S.W.2d 234 [2, 3].

X. Another complaint goes to witness Washington's identification of appellant, which was positive, appellant contending the witness was a non-expert and should not have been permitted to give an opinion or state a conclusion. The witness had known appellant for twelve years and, with witness Reed, was with appellant that night prior, at and subsequent to the shooting. He possessed ample testimonial qualifications to identify appellant.

XI. Appellant claims the court erred in sustaining objections interposed by the State to inquiry of Officer Kidd, who was

placed on the stand by appellant, respecting a cigarette lighter taken from the body of Willie Stewart, and reference in the police report to items of personal property taken from the body of Willie Stewart. Officer Stremlau testified that no weapons of any kind were found on Stewart when his body was searched at the morgue. Officer Kidd testified he did not investigate the case, coming into it after the occurrence and arresting appellant; that, answering appellant's counsel's questions, he had not seen any items of personal property belonging to Willie Stewart, including a cigarette lighter; and that he had seen the police report in the case but it was not prepared by him. Appellant was permitted to inquire fully as to facts within the witness' personal knowledge, and we find no error.

■ XII. Appellant contends there was error in admitting testimony of Officer Gooden covering extra-judicial statements of appellant on the ground no proper foundation was laid for their admission. There was no claim the statements were involuntarily made and no request for a preliminary hearing on the issue. Error is not established. State v. Gibilterra, 342 Mo. 577, 116 S.W.2d 88, 93; State v. Holliday, 353 Mo. 397, 182 S.W.2d 553, 554 [5]; State v. Roland, 336 Mo. 563, 79 S.W.2d 1050 [1–6], 102 A.L.R. 601. The statements were admissions of fact rather than a confession involving an admission of a criminal intent.

■ XIII. Appellant, following the overruling of his motion for judgment of acquittal after the State rested, orally requested the privilege of inspecting any articles taken from the body of Willie Stewart, mentioning specifically only a "cigarette case lighter." The testimony was that no weapons were found on deceased. No article taken from his body was offered in evidence. The State's Attorney announced he did not have them. The fact that appellant's request was not

timely is a sufficient reason for sustaining the court's action in overruling it. Sup. Ct.R. 25.19, referring to Federal Rules of Criminal Procedure 17(c), 18 U.S.C.A. Consult § 510.030; 23 C.J.S., Criminal Law, § 855, p. 58; Underhill, Criminal Evidence, 5th Ed., § 524; Gibson v. United States, 8 Cir., 53 F.2d 721 [3], certiorari denied, 285 U.S. 557, 52 S.Ct. 458, 76 L.Ed. 946.

■ XIV. Appellant's counsel opened up the subject of appellant's prior convictions on direct examination. He complains of the cross-examination of appellant on the same subject. We find no error here. §§ 546.260, 491.050; State v. Krebs, 341 Mo. 58, 106 S.W.2d 428 [5]; State v. Hacker, Mo., 214 S.W.2d 413, 416 [7]; State v. Harrison, Mo., 24 S.W.2d 985, 988.

■ XV. Appellant claims error in admitting the testimony of Herbert Wilhelm "in rebuttal upon ground that Wilhelm was not properly endorsed by the State." The names of witnesses called in rebuttal are not required to be endorsed on the charge. Sup.Ct.R. 24.17; § 545.-070; State v. Cook, 318 Mo. 1233, 3 S.W. 2d 365, 367 [9]; State v. Jennings, 326 Mo. 1085, 34 S.W.2d 50, 53 [6].

■ XVI. An issue in appellant's brief complains of his cross-examination showing that he "carried a revolver." It is not well taken for at least two reasons. Appellant's direct examination developed that he drew his revolver from his pocket. Appellant's objection was "to the form of the question." This objection did not raise the issue presented in the point in appellant's brief. State v. Slaten, Mo., 252 S.W. 2d 330, 333 [3–6]; State v. Houston, Mo., 292 S.W. 728, 730 [4]; State v. Richmond, 321 Mo. 662, 12 S.W.2d 34, 36 [8]; State v. Rosegrant, 338 Mo. 1153, 93 S.W.2d 961, 967 [8]. Appellant's drawing his revolver from his pocket was part of the res gestae.

XVII. The court instructed on murder in the first and second degrees; accidental

homicide; presumption of innocence et cetera.

a. Appellant contends the law of the case called for an instruction on self-defense, Sup.Ct.R. 26.02; § 546.070, his motion for new trial asserting that testimony by a State's witness of oral statements by appellant raised the issue. Appellant's citations, State v. Stone, 354 Mo. 41, 188 S.W.2d 20, 22; State v. Crowley, 345 Mo. 1177, 139 S.W.2d 473, 476; State v. Dill, Mo., 282 S.W.2d 456, 460, do not sustain his position. Officer Gooden, of the Homicide squad, testified, so far as material, that appellant, on questioning, stated Willie Stewart came out of the house and asked "What's holding up the sandwiches"; that the man said he was getting them; that Washington said: "That's a tough man up there"; that appellant said: "He ain't so tough"; that Stewart asked appellant what he had said, and appellant answered: "I am not talking to you; whatever I say is none of your business"; that Stewart said: "What I should do is kick you corn-fed niggers in the behind," and appellant answered: "No, I wouldn't do that, if I were you"; that Stewart started down the steps, appellant pulled his revolver, pointed it at Stewart, and told him: "Don't come any closer"; that Washington pulled Stewart by the arm, saying Stewart had something in his pocket, and as Washington pulled Stewart from the steps, Stewart's arm hit the revolver and it discharged. Appellant, Washington and Reed then ran. There was some testimony that Stewart walked down toward the sidewalk steps. He came out of the house with his hands in his trouser pockets. Appellant testified he drew his revolver while on the sidewalk and went up the sidewalk steps and to the house steps with his gun drawn; that he told Stewart to take his hands out of his pockets and Stewart did so. He also testified Stewart had his hand in his pocket up to the time Stewart was pulled off of the steps. He did not see Stewart with any weapon and Stewart did not strike him.

He was pointing his gun at Stewart and holding him at bay on the steps with Stewart's back to the door of the house. Then, according to appellant (denied by Washington), Washington ran up to the second step at the house where they were standing, grabbed Stewart by the arm, jerked him off of the steps, and, in falling, either Stewart or Washington struck appellant's revolver and it went off. Appellant didn't feel the discharge or kick-back from the gun; "It didn't feel like it had went off; I didn't see no blaze or nothing come from it, so I couldn't actually say where the shot came from." The only way appellant saw it was his gun was "accidentally discharged."

Self-defense involves an intentional act; an accidental homicide, an unintentional act. The testimony established murder or an accidental shooting. An instruction on self-defense was not required. State v. Baker, Mo., 277 S.W.2d 627, 629 [5]; State v. Bennett, Mo., 87 S.W.2d 159, 163 [12]; State v. Singleton, Mo., 77 S.W. 2d 80, 83 [5]; State v. Reed, 117 Mo. 604, 614 (IV), 23 S.W. 886, 889(4). It is no defense to the charge of carrying concealed weapons that the weapon is carried for the purpose of self-defense, State v. Keet, 269 Mo. 206, 190 S.W. 573, 576 [4], L.R.A. 1917C, 60; and appellant's statement that "failure to instruct on self-defense to allow for legal possession of a weapon" precluded consideration of an accidental shooting is without merit.

b. Deceased inflicted no actual personal violence—battery—upon appellant. In fact, the evidence fails to show a hostile demonstration with any weapon by the deceased or attempt to strike appellant. A manslaughter instruction was not required. State v. Carroll, 333 Mo. 558, 62 S.W.2d 863, 867 [14]; State v. Smith, Mo., 240 S. W.2d 671, 674.

c. Appellant claims the court erred in refusing instructions offered by defendant. The point and the following subdivisions in his motion for new trial

and brief are too general to preserve any issue for review in that the specific reason for error is not stated. That the refused instructions "were fair" and "properly hypothesized" the facts according to the evidence. That the given instruction on accident "did not properly hypothesize the evidence." That refused instructions "E, F, G, H, and I should have been given and it was error" to refuse them. Sup.Ct.R. 27.20, 1.08(a) (3); State v. Bennett, Mo., 87 S.W.2d 159 [6]; State v. Bird, 286 Mo. 593, 228 S.W. 751 [1]; State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 309 [8]; State v. Miller, 357 Mo. 353, 208 S.W.2d 194, 201 [15]; State v. McLachlan, Mo., 283 S.W.2d 487, 489 [5]; State v. Jordan, Mo., 235 S.W.2d 379, 383 [7, 8]; State v. Kurtz, 221 Mo.App. 114, 294 S.W. 117, 121 [6].

■ d. Appellant's contention that his refused instruction on circumstantial evidence should have been given ignores appellant's testimony that he accidentally fired the shot and witness Washington's testimony that he saw appellant shoot Stewart. An instruction on circumstantial evidence was not required. State v. Judge, 315 Mo. 156, 285 S.W. 718, 722 [14]; State v. Wilson, Mo., 248 S.W.2d 857, 859 [6]; State v. Mangercino, 325 Mo. 794, 30 S.W.2d 763, 767 [11].

■ e. We find no objection interposed to the given instructions. Appellant's criticisms of them are not for consideration. State v. Rush, Mo., 286 S.W.2d 767, 772 [7]; State v. Stroemple, 355 Mo. 1147, 199 S.W.2d 913, 916 [6]. We think they fairly presented the issues.

■ XVIII. a. Appellant complains of the argument. He says: "State's counsel particularly alluded to there being no self-defense which does not accord with the facts." We have considered the evidence did not call for an instruction on self-defense. The State's attorney may make a vigorous argument so long as his remarks are confined to the record and the legitimate inferences that may be drawn there-

from. State v. Stroud, 362 Mo. 124, 240 S.W.2d 111, 113 [11]; State v. Rosegrant, 338 Mo. 1153, 93 S.W.2d 961, 973 [22]. No objection was interposed to the only direct remark we find of record by the State's attorney that: "There is nothing in this case about any self-defense." See State v. Baker, Mo., 277 S.W.2d 627, 631 [12].

■ b. "State's counsel particularly alluded to the fact that the accused 'had to prove a crime' in order to establish a defense of accident," which remark referred to accused having a concealed weapon. Appellant testified his revolver was loaded, was concealed in his pocket, and he pulled it out while on the sidewalk before he walked up the steps just prior to the shooting. There was other testimony to like effect. Although the fact that an accused has a dangerous weapon or is carrying a dangerous weapon unlawfully does not deprive him of the right to use it in necessary self-defense, such facts are for the consideration of the jury. 40 C.J.S., Homicide, § 119, p. 992; Biddle v. State, 131 Ark. 537, 199 S.W. 913 [2]. Consult State v. Keet, 269 Mo. 206, 190 S.W. 573, 576 [4], L.R.A.1917C, 60; State v. Charles, Mo., 268 S.W.2d 830, 835 [7]. It was part of the res gestae and could be considered on deliberation. State v. Parr, 296 Mo. 406, 246 S.W. 903, 905 [1]; State v. Mosley, Mo., 22 S.W.2d 784, 786 [5].

■ c. Appellant complains that the State alluded to certain convictions of appellant "contrary to the rules of evidence and ethics, and referred to the accused as a 'confessed convict'." The subject of appellant's prior convictions first came into the case on his direct examination and the State was entitled to make further inquiry on cross-examination. § 546.260; State v. White, 330 Mo. 737, 51 S.W.2d 109, 113 [7]. Argument based on this evidence was not contrary to the rules of evidence. Reference to appellant as a "confessed convict" was within appellant's own testimony. State v. Rasco, 239 Mo. 535, 580, 144 S.W.

449, 463 [26, 27]; State v. Charles, Mo., 268 S.W.2d 830, 835 [9]; State v. Hulbert, Mo., 228 S.W. 499, 502 [8].

XIX. The remaining points in appellant's brief are without merit. Several fall within the issues ruled. The points that the court erred in admitting testimony of Officer Stremlau that Dr. John Franklin pronounced Stewart dead upon arrival at the hospital and that all the testimony of Fred Stewart should have been excluded because he failed to identify appellant in court are not for review because no objections raising the issues were interposed at the trial. State v. Marshall, 354 Mo. 312, 189 S.W.2d 301, 304 [6]. Appellant does not point out where and we find nothing in the record to sustain appellant's assertion that counsel for the State was permitted to make challenges for cause "in such manner as to amount to twenty additional peremptory challenges for the State." No abuse of discretion is shown in the court first refusing, after overruling appellant's motion for acquittal after the State rested, appellant's request to recall certain State witnesses upon the court authorizing appellant to call the witnesses and examine them as adverse witnesses. Other points, and perhaps some points discussed, are too general in that they do not specify why the asserted action of the court was error. Sup.Ct.R. 27.20, 1.08(a) (3); § 547.030; State v. McLachlan, Mo., 283 S.W.2d 487, 489 [5] and cases cited. See paragraph XVII, c, supra.

The transcript sets forth the indictment, the arraignment, defendant's presence at the trial, the verdict, the according of allocution, the judgment and sentence. They are in proper form and sufficient.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.